| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| STEVEN ANDILORO, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 75].

## I.    BACKGROUND

### A.    Offense Conduct[1]

At the time of the offense conduct, Defendant resided in Mooresville, North Carolina, and owned and controlled at least four companies, including EZ Limo and Car Service, LLC ("EZ Limo") and Professional Security Solutions, LLC ("Professional Security"). [Doc. 48 at ¶¶ 15-16: Presentence Investigation Report (PSR)]. After the onset of the COVID-19 pandemic, the United States Small Business Administration ("SBA") administered the Paycheck Protection Program ("PPP"), a COVID-19 pandemic relief program that provided forgivable loans to small businesses for job retention and certain other expenses. [Id. at ¶ 18]. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities,

---

[1] The Court presents only that conduct relevant to the ground for relief asserted in the pending motion to vacate.

1

rent and mortgage payments, accounts payable and other bills incurred by qualifying businesses during and resulting from the pandemic. [Id.]. Bank of America, United Community Bank as successor-in-interest to Aquesta Bank, and Cross River Bank were third-party participating lenders in the PPP. [Id. at ¶ 19].

On or about April 4, 2020, June 12, 2020, February 10, 2021, and March 20, 2021, Defendant submitted applications for four PPP loans, two on behalf of EZ Limo and two on behalf of Professional Security, to Bank of America, Aquesta Bank, and Cross River Bank. [Id. at ¶ 23]. In those applications, Defendant inflated the revenues, numbers of employees, and other information in order to qualify for the PPP loans or to obtain larger PPP loans than for which the businesses would have otherwise qualified and submitted false and altered documents to support the inflated numbers. [Id.].

Based on false information Defendant provided to Bank of America, a financial institution as defined by statute, for the first PPP loan on behalf of Professional Security, Bank of America approved the loan and disbursed $1,729,166 to a Bank of America business bank account for Professional Security. [Id. at ¶¶ 38-43]. On June 27, 2020, Defendant wired $253,313.66 of these PPP proceeds to a closing attorney to fund the purchase of a residence in Florida. [Id. at ¶ 44].

Based on false information Defendant provided to Bank of America for the second PPP loan on behalf of EZ Limo, Bank of America approved the loan and disbursed $20,832.00 to a Bank of American business bank account for EZ Limo. [Id. at ¶¶ 45-48].

Based on false information Defendant provided to Aquesta Bank for the third PPP loan on behalf of EZ Limo, Aquesta Bank approved the PPP loan and disbursed $169,076.00 to an Aquesta Bank business bank account for EZ Limo. [Id. at ¶¶ 49-51].

Based on false information Defendant provided to Cross River Bank for the fourth PPP loan on behalf of Professional Security, Cross River Bank approved the PPP loan and disbursed $697,455.00 to a business bank account for Professional Security. [Id. at ¶¶ 52-56].

In total, Defendant received $2,614,529 in PPP funds from these four false PPP loan applications. [Id. at ¶ 57]. Defendant used the funds for various improper purposes, including funding luxury vacations, making payments to investor-victims of his other schemes, and purchasing real property in Florida. [Id. at ¶¶ 37, 44, 57].

**B.      Indictment, Guilty Plea, and Sentencing**

On July 19, 2023, Defendant was charged in a Bill of Indictment with one count of securities fraud in violation of 15 U.S.C. §§ 78j and 78ff (Count One), one count of wire fraud in violation of 18 U.S.C. § 1343 (Count Two), and one count of money laundering in violation of 18 U.S.C. § 1957 (Count Three). [Doc. 1: Bill of Indictment]. Defendant pleaded guilty to Counts One and Two pursuant to a plea agreement and the Government dismissed Count Three. [Doc. 41: Plea Agreement; Doc. 42: Entry and Acceptance of Guilty Plea].

Before sentencing, a probation officer prepared a PSR. [Doc. 48]. The probation officer grouped Counts One and Two for the guideline calculations pursuant to U.S.S.G. § 3D1.2(d). [Id. at ¶ 64]. The probation officer recommended a base offense level of seven based on the statutory maximum term of imprisonment of 20 years, U.S.S.G. § 2B1.1(a)(1), an 18-level enhancement for a loss amount between $3.5 million and $9.5 million, U.S.S.G. § 2B1.1(b)(1)(J), a two-level enhancement because the Defendant derived more than $1 million in gross receipts from one or more financial institutions as a result of the offense,[2] U.S.S.G. § 2B1.1(b)(17)(A) (the "Gross Receipts Enhancement"), and a three-level reduction for acceptance of responsibility, U.S.S.G. §

---

[2] The probation officer noted an aggregate loss of $5,118,155. [Doc. 48 at ¶ 66].

3

3E1.1, for a total offense level of 24.  [Id. at ¶¶ 65-67, 73-75].   With a total offense level of 24 and a Criminal History Category ("CHC") of II, the sentencing guidelines recommended a sentence between 57 and 71 months.  [Id. at ¶¶ 86-87, 109].

At sentencing, Defendant testified that he had read the PSR, understood everything in it, and had had sufficient time to discuss it with his attorney.  [Doc. 74 at 2: Sentencing Tr.].  On Defendant's objection the recommended CHC of II, the Court indicated its intention to vary downward to a CHC of I, finding that Defendant's criminal history was overstated, which yielded a guidelines range of 51 to 63 months.  [Id. at 3].  Defendant's attorney argued thoroughly and commendably in support of a low sentence.  [See id. at 4-15].  The Government argued for a sentence at the low end of the guidelines range after the variance.  [Id. at 15-21].

The Court sentenced the Defendant to a total term of imprisonment of 45 months, believing that the history and characteristics of the Defendant, 18 U.S.C. § 3553(a), supported a sentence below the guidelines range.  [Doc. 57 at 2: Judgment; Doc. 58 at 3: Statement of Reasons]. Judgment on Defendant's conviction was entered on May 27, 2025.  [Id. at 1].  Defendant did not file a direct appeal.

###   C.   Defendant's Motion to Vacate

Defendant timely filed the pending motion to vacate through counsel.  [Doc. 75]. Defendant claims he received ineffective assistance of counsel because his attorney failed to object to the two-level Gross Receipts Enhancement where the Government failed to prove by a preponderance of the evidence that Defendant derived more than $1 million in gross receipts from financial institutions.  [Id. at 5].  That is, Defendant contends that the financial institutions disbursed the PPP loans into the bank accounts of two of Defendant's companies, not to Defendant "individually" as contemplated by Application Note 13(A) of U.S.S.G § 2B1.1 and that there is

4

insufficient evidence to show that Defendant derived over $ 1 million in gross receipts from those companies. [Id.]. Defendant claims that had his counsel objected to the enhancement and "assuming that the remaining part of [the]calculation including variance remained the same," his sentence would have been 35 months. [Id.].

For relief, Defendant asks the Court to vacate his sentence. [Id. at 13].

## II.       STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.      DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). This includes a "'strong presumption' that counsel's strategy and tactics" fall within this range. Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under 'prevailing

professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 88 (2011). Moreover, an attorney's failure to raise a meritless issue is not ineffective assistance. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999); United States v. Anthony, 149 Fed. App'x 135, 136 (4th Cir. 2005) (rejecting claim "that counsel rendered ineffective assistance for failing to assert a meritless objection in district court").

To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

The Gross Receipts Enhancement provides for a two-level enhancement when a defendant "derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense." U.S.S.G. § 2B1.1(b)(17)(A). For purposes of this provision, "[a] defendant [is] considered to have derived more than $1,000,000 in gross receipts if the gross receipts to the defendant individually, rather than to all participants, exceeded $1,000,000." U.S.S.G. § 2B1.1 cmt. n.13(A). "Gross receipts" means "any property, real or personal, tangible or intangible, which is obtained, directly or indirectly as a result of [the] offense." 18 U.S.C. § 982(a)(4); see U.S.S.G.

6

§ 2B1.1(b)(17)(A), cmt. n. 13(B). A defendant is deemed to have derived such gross receipts when they are disbursed by a financial institution to a company owned and controlled by the defendant. United States v. Pendergraph, 388 F.3d 109 (4th Cir. 2004) (upholding application of a now consolidated version of a four-level gross receipts enhancement, § 2F1.1(b)(8)(B), where the defendant wholly owned the company receiving the funds); United States v. Ross, 132 F.4th 952, 958-59 (6th 2025) (upholding application of the gross receipts enhancement where the defendant indirectly obtained funds, noting that the Sentencing Commission's "broad definition" of gross receipts "signal[ed] that it would not have intended to limit the enhancement's application to only gross receipts transferred *directly* from a financial institution to a defendant") (emphasis in original); United States v. Stolee, 172 F.3d 630, 631 (8th Cir. 1999) (upholding application of § 2F1.1(b)(8)(B) to a defendant who was the sole owner and president of the corporation that received the fraudulently obtained funds). See United States v. Colton, 231 F.3d 890,911 (4th Cir. 2000) (refusing to attribute corporate receipts to a shareholder under § 2F1.1(b)(8)(B) on the grounds that the defendant "owned *only* a fifty percent-i.e., noncontrolling-interest in [the corporation]").

Here, Defendant complains that his attorney was ineffective for failing to challenge the Gross Receipts Enhancement on the grounds that the funds from the financial institutions were disbursed to the bank accounts of his companies and not to his own personal bank accounts. The Court will deny and dismiss this claim. It is not ineffective assistance to refuse or decline to raise a meritless issue. See Kilmer, 167 F.3d at 893; Anthony, 149 Fed. App'x at 136. Defendant did and does not dispute that he owned and controlled EZ Limo and Professional Security and that funds in excess of $1 million were disbursed to the bank accounts of these companies. There was no need for proof beyond a preponderance of the evidence tracing these funds to individual

7

purchases and expenditures by the Defendant, as he contends. The Court properly applied the Gross Receipts Enhancement and would have overruled any objection lodged by defense counsel challenging this enhancement. In this regard, Defendant, therefore, also has not and cannot show prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 75] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.
Signed: July 9, 2026

Kenneth D. Bell
United States District Judge